## T. C. RAMIREZ v. THE STATE.

### No. 9068.    Delivered October 7, 1925.

**1.—Carrying Brass Knuckles—Evidence—Cross-Examination.**

Where on a trial for carrying brass knuckles, appellant was not permitted on cross-examination of the main prosecuting witness Wherry, to ask him if it was not a fact, that witness had told Mrs. Thompson, a waitress in his cafe, that he did not want her to permit appellant to continue to come in and take up her time as showing animus toward appellant, no error is shown of a harmful character, said witness having testified to substantially the same effect on his direct examination.

**2.—Same—Misconduct of Counsel—Side Bar Remarks—Not Reversible Error.**

Where counsel for the State in response to a question asked the prosecuting witness on cross-examination made the side bar remark, "Well, he came mighty near being beaten to death, and he would have done it." The remark of counsel appears by the qualification of the bill to have been somewhat responsive to the remarks of appellant's counsel, and is not of such character as not being susceptible of withdrawal from consideration of the jury. Following Meyers v. State, 39 Tex. Crim. Rep., 500, also Branch's Ann. P. C. Sec. 362.

**3.—Same—Evidence—Properly Admitted.**

There was no error in permitting the witness Roberts to testify, for the state, that he started to go to the place of the difficulty between appellant and Wherry, because Wherry looked to be pretty badly hurt, and like the other man was doing him up, and was prevented from reaching Wherry by appellant. All of the witnesses testified to practically the same effect as to Wherry's injuries. We fail to perceive from this record, any errors that would justify a reversal, and the judgment is therefore affirmed.

Appeal from the County Court of Dallas County at Law, No. 2. Tried below before the Hon. Wiley A. Bell, Judge.

101 Tex. Crim.—24.

Appeal from a conviction for unlawfully carrying brass knuckles, penalty six months in the county jail, and a fine of $150.00.

The opinion states the case.

No brief filed for appellant.

*Shelby Cox*, District Attorney, *Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is unlawfully carrying brass knuckles; punishment fixed at confinement in the county jail for a period of six months and a fine of one hundred fifty dollars.

According to the witness Wherry, he was manager of the Magnolia Cafe. Appellant entered the premises and protested against the discharge of a certain waitress. Appellant put his right hand in his pocket, drew it out and struck Wherry. The first lick broke Wherry's nose in four places. The witness said appellant had brass knucks on his hand. The witness was confined in a hospital for six days. His face was disfigured and there were marks on his lips and face from the rings of the knucks. There had been no previous difficulties, and the parties were strangers. The witness was struck several times. He was dazed at the first lick. Immediately thereafter, he saw the knucks on the right hand of the appellant. The witness was knocked down by the last blow struck by the appellant.

Jack Smith for the appellant testified that after some passage of words in which the appellant said that he had not come to eat but to see a lady whom he named and Wherry replied that the lady had bad habits, he was struck by the appellant with his open hand. Wherry thereafter struck the appellant knocking him against a stool. Appellant then got up and knocked him down. Appellant's hand was wrapped up with a tape but it contained no brass knucks. Two other witnesses upon behalf of the appellant testified that they saw the affray; that the appellant used no brass knucks but that his hand was wrapped with tape.

Appellant testified that he had learned that Wherry had made some remarks about a lady and entered the Magnolia Cafe to get satisfaction from him and said: "Don't you think it would be better to ask me to stay out of your place of business instead of firing Mrs. Thompson?" Appellant told Wherry that he ate elsewhere but came to the restaurant to see Mrs. Thompson. Wherry replied that Mrs. Thompson had bad habits. Appellant denied this and slapped Wherry. Wherry struck the appellant, who then knocked him down. Appellant had nothing in his hand except a piece of tape. The knuckles of his left hand were disjointed and he wore adhesive tape to give them strength. He had no knucks of any kind.

One witness for the State testified positively that she saw brass knucks on the appellant's hand; that she was very close to the parties at the time and saw the blows struck. Another witness testified that upon observing the difficulty, he undertook from another part of the building to go to the parties when he was intercepted by the appellant who had something wrapped up in his hand, and that he made a pass towards his pocket.

Doctor Ford testified that he treated Wherry; that his nose was dislocated and a cartilage was fractured. The fleshy part of the nose was badly bruised and the nose was dislocated. It was laying over against the right part of the cheek. It had been knocked clear loose and was hanging over on his right cheek. The doctor said he did not think the blow could have been made with the first but that it could have been made with knucks or an instrument of that character. There was testimony that the appellant had been in the habit of wearing tape on his left hand.

In Bill No. 1 the complaint is that the court sustained the objection to a question which appellant propounded to the witness Wherry on cross-examination in which he was asked if it was not a fact that he had told Mrs. Thompson, the waitress in his establishment, that he wanted her to quit letting the appellant come in and take up her time. The appellant contends that he would have received an affirmative answer to this question and that it bore upon the animus of the witness Wherry. It appears that Wherry did testify that he had no feeling against the appellant and that he did not state on the day previous to the trouble that he did not want the appellant in his place of business. Wherry also testified that in the beginning of the conversation appellant asked him about discharging the lady, Mrs. Thompson, and that he had not previously objected to the appellant coming to the cafe. In this state of the record, it seems that the testimony was in substance what had already been given by Wherry, namely, that he had not stated that he did not want the appellant in his place of business. If the question set out in the bill of exceptions was for the purpose of impeaching Wherry, it might have been pertinent, but it seems not to have been intended for that purpose, and Mrs. Thompson was not called as a witness at all upon behalf of the appellant. In the state of the record, we are constrained to regard the bill as not showing any error authorizing a reversal of the judgment.

In Bill No. 2 it is made to appear that while the witness Smith for the appellant was under cross-examination, State's counsel propounded this question to him:

"When did he tell you he was going down there and try to beat this man to death?"

Objection was made, and State's counsel made the side remark: "Well, he come mighty near being beaten to death, and he would have

done it.'' The court was requested to reprimand counsel for making this remark. In qualifying the bill the court said that the remark was made in answer to a request of the court to admonish counsel against asking a question and that the court did admonish him in the presence of the jury against asking a question against the proceeding, to which the bill relates. As the matter is presented, in the accepted explanation, we are of the opinion that the matter is not of a nature warranting a reversal. The remark of counsel appears by the qualification to have been somewhat responsive to the remarks of appellant's counsel, but aside from that, it is not of a nature which is regarded by the court in many previous decisions as susceptible of withdrawal. See Meyers v. State, 39 Texas Crim. Rep. 500; also Branch's Ann. Tex. P. C., Sec. 362.

Bill No. 3 is only approved as qualified, and thus construed, it reveals that while the appellant was upon the witness-stand, he was asked by his counsel what took place there, to which he replied: ''I had to see Mr. Bryant about renting a room.'' Objection was made that this was not relevant to the matter under investigation. Upon sustaining the objection, counsel for the appellant said: ''I except. Mr. Wherry testified that he had no feeling against ths defendant, and we want to shcw he did have feeling against him.'' As qualified, this bill fails to show error.

In Bill No. 4 it is shown that while the witness, Minor Roberts was testifying, he was asked by State's counsel, this question: ''What happened to keep you from going back there, if anything?'' meaning what prevented him from going to the place of the difficulty. Objection was made to the question, and the witness replied: ''I started to go there because Wherry looked to be pretty badly hurt, and the other man looked like he was doing him up, and when I got as close to him as that chair there, someone stopped me.'' The statement of Roberts that Wherry appeared to be ''done up'' seems to have stated but an undisputed fact coming from several of the other witnesses. In fact, it came from all of them, and it appears from other parts of Roberts' testimony that he was some distance from where the difficulty began and that he did not reach it until it was over and that he was prevented from reaching it by the appellant who stopped him on the way.

There is a sharp conflict of testimony touching the use of brass knuckles by the appellant. Upon that issue the verdict of the jury must be accepted unless in his rulings upon the evidence or in directing the jury the court was at fault. In our examination of the record, we have failed to perceive that any error was committed which would warrant or justify this court in ordering a reversal of the judgment. It is therefore affirmed.

*Affirmed.*